UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YVONNE DENISE MENDOZA,

     Plaintiff,

v.                                                   Case No.:  8:23-cv-00229-NHA

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

     Plaintiff asks the Court to reverse Defendant's denial of her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Plaintiff argues that three errors necessitate reversal: first, the Administrative Law Judge ("ALJ") failed to identify a sufficient basis to find the medical opinions of Jasmine Moran, APRN, and Mary Buggia, M.D., unpersuasive; second, the ALJ failed to develop the record concerning Plaintiff's manipulative and mental health limitations; and, third, the ALJ failed incorporate additional mental health limitations into his assessment of Plaintiff's residual functional capacity. After reviewing the parties' briefing and the record below, I find the ALJ based his decision on substantial evidence and employed proper legal standards. I affirm.

1

## I.     Background

Plaintiff, who was born in 1979, attended school through 11th grade and worked as a housekeeper until October 2019. R. 40-44, 306, 308, 310, 328-29. Plaintiff claims on her DIB application that she became disabled on October 15, 2019 (R. 308), and on her SSI application that she became disabled on October 17, 2020 (R. 310).

Plaintiff alleged her disability resulted from her lack of a thyroid gland, lupus, rheumatoid arthritis, aneurysm, depression, childhood spine fracture, anxiety, multiple sclerosis (with which she had not been diagnosed), finger deformities, and sciatica nerve pain. R. 327. Plaintiff later supplemented her application to report, in relevant part, that her symptoms from depression had worsened and that she suffered from mental fog and confusion. R. 374. And, although she did not list fibromyalgia on her application for disability or its supplement (*see* R. 327, 374), Plaintiff testified at the hearing that she had fibromyalgia. R. 52.

### A. Physical Condition

Plaintiff testified at the May 17, 2022 hearing before the ALJ that she had "severe and intense pains" in her hands, feet, knees, and hip. R. 44. She reported that this prevented her from engaging in daily activities, including cooking, showering, dressing, reaching for items, and holding a pen. R. 45-46. Additionally, Plaintiff explained that she could not sit for more than 15

minutes or stand for more than five minutes without needing to change positions, and that she used a walker to get around. R. 47-49. Plaintiff also reported numbness and tingling on one side of her body. R. 44.

Rheumatologist, Dr. Abdul Lodhi suspected Plaintiff's joint pain was caused by fibromyalgia,[1] or a form of arthritis, although it appears he never made a definitive diagnosis. R. 697; 1283 (still noting possibility of fibromyalgia "vs" arthritis in March 2022). In any event, the medical records show Plaintiff's reports of joint pain to her medical providers were inconsistent and sometimes limited to a specific area. *See* R. 630 (painful hands), 640 (pain in right shoulder), 967, 972, 1357 (knee pain), 1394; *but see* 629 (denying painful joints), 635 (same), 756 (same). And, there was some indication that Plaintiff was able to manage her joint pain. *See* R. 736 (reporting joint pain better); R. 1358 (Plaintiff able to exercise), 1395 (same). In September 2021, Plaintiff reported that she was "exercising every day, walking for 20 min[utes] or doing yoga" and also doing hobbies that required use of her hands, like crafts and pottery. R. 1242.

Nonetheless, two separate medical providers, Jasmine Moran, APRN, and Mary Buggia, M.D., opined that Plaintiff was very limited in her physical

---

[1] Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 77 Fed. Reg. 43640 (July 25, 2012).

abilities. On April 22, 2022, APRN Moran, Plaintiff's primary care provider, opined that Plaintiff could sit for 30 minutes at one time and for zero hours in an eight-hour workday; stand or walk for 30 minutes at one time and for zero hours total in an eight-hour workday; never lift anything; and never grasp, turn, twist, manipulate, or reach; and required a cane. R. 1329. Dr. Buggia, who performed a single consultative examination of Plaintiff, opined that Plaintiff could "sit at desk/chair and talk on telephone; work on computer; handle paperwork/documents at least ⅔ of work day" but was "unable to stand, walk for more than ⅔ of work day." R. 890.

B. <u>Mental Condition</u>

As to her mental limitations, Plaintiff saw a psychiatrist beginning in June 2021 who determined that Plaintiff had major depressive disorder, obsessive compulsive disorder, and generalized anxiety disorder. R. 1250. But, by September 2021, after some adjustments to her medication, Plaintiff reported doing much better. R. 1242; *see also* 1263 (reporting she planned to do Zumba and crafts the next day despite having a difficult day). In March 2022, Plaintiff reported that her medications were helping her with anxiety, stress, and depression. R. 1430. But, at the May 2022 hearing, she reported the medications were not working. R. 56.

## II.    Procedural History

Plaintiff applied for both DIB and SSI. R. 308-317. The Commissioner denied Plaintiff's claims both initially and upon reconsideration. R. 153 (initial determination as to DIB), 168 (initial determination as to SSI), R. 184 (reconsideration as to DIB), 193 (reconsideration as to SSI). Plaintiff then requested an administrative hearing. R. 229-230. Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. R. 33-68. Following the hearing, the ALJ found Plaintiff was not disabled and denied Plaintiff's claims for benefits. R. 11-26.

The ALJ used the Social Security Regulations' five-step, sequential evaluation process to determine whether Plaintiff was disabled. R. 12-13. That process analyzes:

1)  Whether the claimant is currently engaged in substantial gainful activity;

2)  If not, whether the claimant has a severe impairment or combination of impairments;

3)  If so, whether any impairments meet or equal the severity of the specified impairments in the Listing of Impairments;

4)  If no impairments do so, whether, based on a residual functional capacity ("RFC") assessment, the claimant can perform any of his or her past relevant work despite the impairment(s); and

5

5) If not, whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Following the hearing, the ALJ concluded that:

1) Plaintiff had not engaged in substantial gainful activity since October 15, 2019, the alleged onset date. R. 14.

2) Plaintiff did have severe impairments, specifically, "degenerative disc disease; fibromyalgia; inflammatory polyarthropathy; diabetes mellitus; hypothyroidism; obesity; major depressive disorder; obsessive-compulsive disorder; and generalized anxiety disorder." *Id.*

3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Of note, at this step, the ALJ found Plaintiff had moderate limitations in concentrating, persisting or maintaining pace. R. 16.

4) Plaintiff's RFC allowed her to perform light work subject to certain limitations: she could frequently use her upper extremities for grasping and fine manipulation; could frequently reach with her right upper extremity; could occasionally crawl, crouch, kneel, stoop, or climb ramps or stairs; could never climb ladders, ropes, or scaffolds;

6

could never work around hazards, such as open, moving machinery and unprotected heights; could understand, remember, carryout, and exercise judgment for simple tasks; could work in an environment with few day-to-day changes in work duties, work settings, or work processes; could never work with the general public; and could frequently interact with co-workers and supervisors, but these interactions should not be more than superficial and work-related. R. 17. Plaintiff could not perform her past relevant work. R. 24.

5) Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), Plaintiff had the RFC to perform the jobs of marker, routing clerk, and router. R. 25-26.

Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff was not disabled. R. 26.

Following the ALJ's ruling, Plaintiff requested review from the Appeals Council, which denied it. R. 1-7. Plaintiff then timely filed a complaint with this Court. Compl. (Doc. 1). Plaintiff filed a brief opposing the Commissioner's decision (Doc. 17), the Commissioner responded (Doc. 21), and Plaintiff replied to that response (Doc. 22). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### III.   Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## IV.   Analysis

Plaintiff alleges the ALJ committed three errors: the ALJ (1) identified an insufficient basis for finding the opinions of Jasmine Moran, APRN, and Mary Buggia, M.D., unpersuasive; (2) failed to develop the record concerning Plaintiff's manipulative and mental health limitations; and (3) failed to incorporate additional mental health limitations into Plaintiff's RFC.

### A.  Evaluation of Opinion Evidence

Plaintiff first argues that the ALJ erred in formulating Plaintiff's RFC by finding unpersuasive the opinions of Jasmine Moran, APRN, and Mary Buggia, M.D.

1. Legal standard for consideration of medical opinions in forming an RFC.

The RFC is the most that a claimant "can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must assess the RFC based on "all the relevant evidence in the [] record," and must consider all the claimant's impairments, both severe and non-severe. *Id.* §§ 404.1545(a)(1)-(3); 416.945(a)(1)-(3). The ALJ considers medical opinions in making the RFC assessment. *Id.* §§ 404.1545(a)(3); 416.945(a)(3). But the ALJ also "consider[s] descriptions and observations of [a claimant's] limitations from [her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant], [her] family, neighbors, friends, or other persons." *Id.* §§ 404.1545(a)(3); 416.945(a)(3).

The ALJ need not assign specific evidentiary weight to any medical opinion. *Id.* §§ 404.1520c(a), 416.920c(a). The ALJ must, however, consider five factors in evaluating the persuasiveness of a medical opinion: supportability, consistency, relationship with claimant, specialization, and other factors. *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Moreover, the ALJ must articulate how he considered the supportability and consistency factors, which the regulations deem the most important. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, the more relevant the objective medical evidence and supporting explanations from the medical

source, the more persuasive the medical opinion will be. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(1). As to consistency, the more consistent a medical opinion is with the evidence from other sources, the more persuasive the medical opinion will be. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

### 2.  APRN Moran's Opinion

The medical records show that Jasmin Moran, APRN, served as Plaintiff's primary care provider from at least June 17, 2020 (R. 753) until April 22, 2022 (R. 1394). *See also* R. 1329. Plaintiff saw APRN Moran approximately 12 times, for both routine visits (e.g., R. 628, 1394) and specific complaints, including scalp paresthesia (R. 633), facial numbness (R. 756), shoulder pain (R. 640), knee pain (R. 1394), and more generalized joint pain (R. 967). Most of these visits occurred via videocall (R. 630, 633, 635, 637, 640, 756, 972, 1357); but APRN Moran physically examined Plaintiff on four occasions (R. 628, 736, 967, 1394). In those examinations, she noted that Plaintiff was in no acute distress, had a full range of motion in her neck, and had normal motor strength in her upper and lower extremities. R. 628, 737, 969, 1397. APRN Moran treated Plaintiff's joint pain through prescriptions, other treatments, and referrals to specialists. *See e.g.*, R. 641-42 (ordering labs and an MRI and prescribing Ibuprofen, Hydroxychloroquine Sulfate, and Prednisone for joint pain), R. 1398 (injections, additional medications, and referral for a two-wheel walker).

On April 22, 2022, APRN Moran filled out an RFC questionnaire and opined that Plaintiff could never lift anything; could never grasp, turn, twist, manipulate, or reach; could sit for 30 minutes at one time and for zero hours total in an eight-hour workday; could stand/walk for 30 minutes at one time and for zero hours total in an eight-hour workday; could walk zero city blocks; required a cane; needed to take at least four 30-minute breaks during the workday; and needed to miss three days of work each month. R. 1329.

The ALJ found APRN Moran's opinion "not persuasive," explaining:

> her extreme limitations are inconsistent with the record as a whole and are not supported by her own treatment records, in which she provided conservative treatment for the claimant without [sic.] routinely unremarkable examination findings. The record shows that the claimant has had some limited range of motion and pain in her joints, pain and limited range of motion in her shoulders at times, and had one instance of left sided numbness of her face, but she was able to resolve her numbness with treatment and reported it was no longer an issue just one month later. Furthermore, the record routinely shows that the claimant had a normal gait and station, full muscle strength and intact sensation in her upper and lower extremities, normal neurological findings, normal cranial nerve findings, normal straight leg raise testing, and normal range of motion throughout her musculoskeletal system. Lastly, while Dr. Buggia noted the claimant had a cane with her during her physical consultative examination, she noted that the claimant's gait and station were the same with and without use of the cane, and that the claimant's gait and station were fully normal without use of a cane (Exs. 1F/2-4; 3F/5, 9, 13-15, 28-31; 5F/1, 10; 6F/1, 16-17, 22, 61-62; 9F/4- 10; 14F/5-7; 17F/2; 19F/6, 20, 29;

12

> 21F/45-47). These objective findings show that the
> claimant is capable of performing light exertional
> work with additional manipulative, postural, and
> environmental limitations.

R. 23.

In finding APRN Moran's opinion "not persuasive," the ALJ explicitly

evaluated the consistency and supportability of APRN Moran's opinion, finding

"her extreme limitations are **inconsistent** with the record as a whole and are

**not supported** by her own treatment records," and going on to cite specific

instances where the record—including APRN Moran's own opinions—did not

support APRN Moran's April 22, 2022 opinion. R. 23 (emphasis added). But

Plaintiff argues the ALJ's stated reasons for finding a lack of supportability

and consistency are unsupported by substantial evidence.

Starting with supportability, the ALJ explained that APRN Moran's

April 22, 2022 opinion was not supported by her own treatment records, in

which she had unremarkable examination findings and provided conservative

treatment. R. 22. Plaintiff contends that the ALJ's reliance on APRN Moran's

unremarkable clinical findings is insufficient considering Plaintiff's

fibromyalgia. Pl. Br., Doc. 17. The Eleventh Circuit has stated that

fibromyalgia "often lacks medical or laboratory signs, and is generally

diagnosed mostly on an individuals described symptoms." *Moore v. Barnhart*,

405 F.3d 1208, 1211 (11th Cir. 2005). Accordingly, the ALJ cannot rely solely

Case 8:23-cv-00229-NHA   Document 24   Filed 02/21/24   Page 14 of 28 PageID 1551

on a lack of objective clinical findings (e.g., normal muscle strength, range of motion) to discount a Plaintiff's limitations from fibromyalgia. *Id.* (citing *Stewart v. Apfel*, 245 F.3d 793 (11th Cir. 2000)); *see also Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010) ("The nature of fibromyalgia itself renders . . . over-emphasis upon objective findings inappropriate." (citations omitted)).

But this case is distinct from ones in which "[o]ther than a lack of objective medical findings, there is nothing in the record to suggest that [Plaintiff] did not suffer the degree of pain she reported or that her doctors should have disbelieved her complaints." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010). Here, the record does contain substantial evidence that Plaintiff was less limited than APRN Moran opined.

For example, the ALJ explicitly noted APRN Moran's conservative treatment. R. 23. "Conservative treatment can support discrediting subjective symptoms even in cases where, like here, a claimant alleges pain from both fibromyalgia and other conditions." *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020); *see also Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that substantial evidence supported the ALJ's decision in part because the claimant's to-date treatments were "conservative in nature"). APRN Moran's treatment included over the counter medication and—in direct contradiction to her April 22, 2022 opinion that Plaintiff was

incapable of physical activity—a directive that Plaintiff engage in moderate intensity exercise. R. 631, 642; *see also* R. 970. Additionally, given that APRN Moran's opinion was not confined to Plaintiff's undiagnosed fibromyalgia but also included Plaintiff's other potential diagnoses, including arthritis (*see, e.g.*, R. 972-73), it was entirely appropriate for the ALJ to consider Plaintiff's lack of objective clinical findings in evaluating the supportability of her opinion. *See Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 702 (11th Cir. 2018) (noting that a claimant's normal gait and range of motion undermined a medical opinion that she was severely limited due to her arthritis). The ALJ's supportability finding as to APRN Moran's opinion is not errant.

Turning to consistency, the ALJ found APRN Moran's April 22, 2022 opinion inconsistent with the record as a whole, which otherwise reflected relatively regular musculoskeletal and neurological findings. R. 23. Plaintiff argues that the ALJ improperly ignored evidence in the record that supported APRN Moran's April 22, 2022 opinion, including evidence related to the severity of Plaintiff's facial paresthesia and back pain. Pl. Br., Doc. 17. But this Court cannot reverse an ALJ's decision simply because the evidence could support a different finding; rather, this Court is limited to determining whether the ALJ's finding is supported by substantial evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (quoting *Bloodsworth*, 703

15

F. 2d at 1329) ("To the extent that [the claimant] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner] . . . . even if the evidence preponderates against' the decision") (alterations in original).

Here, substantial evidence supports the ALJ's determination that APRN Moran's opinion was inconsistent with the record. The record reflects that Plaintiff had a normal gait and did not require the use of an assistive device for walking. R. 727, 732, 818, 887 (noting the same gait with and without use of a cane), 1300, 1311, 1375. On many occasions, her medical providers found Plaintiff had full muscle strength. *See* R. 688-89, 1233, 1315. MRIs of each of her hands were unremarkable (R. 891 ("There is no fracture, dislocation, or acute bony abnormality. Soft tissues are within normal limits. Joint spacings are normal."). An MRI of her knee was also unremarkable. R. 1378. Rheumatologist Dr. Abdul Lodhi did find that Plaintiff suffered from a decreased range of motion in her joints but prescribed low impact exercise to assist with range of motion. R. 1274-75; *but see* R. 888-89 (full range of motion). And, although Plaintiff reported suffering an episode of facial paresthesia and intermitted scalp paresthesia, Plaintiff otherwise had generally unremarkable neurological findings, except for an aneurysm, which was incidentally

16

discovered and remained stable during the treatment period. R. 73, 75-76, 1299, 1313-14, 1317, 1326.

Plaintiff again argues that the ALJ could not rely on normal clinical findings in light of Plaintiff's fibromyalgia. Pl. Br., Doc. 17. But, as previously stated, the ALJ was permitted to rely on normal clinical finding given Plaintiff's other diagnoses. And the ALJ did not rely on objective clinical findings alone to find APRN Moran's opinion lacked consistency with the record. Rather, the ALJ additionally pointed out in his opinion that severe limitations were inconsistent with Plaintiff's activities of daily living, as "the claimant stated she helps provide care for her children, generally addresses her personal care needs with some minor difficulties, prepares simple meals, vacuums, shops in stores." R. 18. I also note that the record includes additional reported capabilities, including Plaintiff' participation in activities such as crafts and pottery, walking for 20-25 minutes at a time, and doing yoga. R. 356, 1263, 1413, 1417.

Thus, substantial evidence supports the ALJ's finding that APRN Moran's April 22, 2022 opinion was inconsistent with other evidence in the record.

Because substantial evidence supports the ALJ's finding that APRN Moran's April 22, 2022 opinion was unpersuasive, I find the ALJ did not err in so finding.

17

### 3.  Dr. Buggia's Opinion

Turning to Mary Buggia, M.D., Dr. Buggia served as the physical consultative examiner in this matter. R. 22. Dr. Buggia performed an examination on Plaintiff on April 24, 2021. R. 884. Dr. Buggia spoke with Plaintiff and noted, among other things, that Plaintiff suffered from severe joint pain, including pain in her back, and was being evaluated for possible neurological issues. *Id.* Dr. Buggia then examined Plaintiff and found that Plaintiff was in no acute distress; could do a normal straight leg raise; had no swollen joints or deformities in her extremities; had full strength in her legs, arms and hands; was able to pinch, grasp, and manipulate objects; had normal gait; though she used a cane, had the same gait with and without the cane; and had no difficulty squatting or rising, getting on and off the examination table, and walking on her toes or heels. R. 886-89. Dr. Buggia then opined that Plaintiff could "sit at desk/chair and talk on telephone; work on computer; handle paperwork/documents at least ⅔ of work day" but was "unable to stand, walk for more than ⅔ of work day. Cannot crawl, kneel, or squat during work day." R. 890.

The ALJ found Dr. Buggia's opinion "not persuasive":

> as it is vague and does not specify what the claimant's limitations and capabilities are directly, specifically in regards to her ability to stand or walk. Additionally, her opinion is not supported by her own objective findings, which were normal and unremarkable,

including the claimant having a normal gait and station and being able to perform a squat with no problems, and also because her opinion is inconsistent with the record as a whole. The record shows that the claimant has had some limited range of motion and pain in her joints, pain and limited range of motion in her shoulders at times, and had one instance of left sided numbness of her face, but she was able to resolve her numbness with treatment and reported it was no longer an issue just one month later. Furthermore, the record routinely shows that the claimant had a normal gait and station, full muscle strength and intact sensation in her upper and lower extremities, normal neurological findings, normal cranial nerve findings, normal straight leg raise testing, and normal range of motion throughout her musculoskeletal system. Lastly, while Dr. Buggia noted the claimant had a cane with her during her physical consultative examination, she noted that the claimant's gait and station were the same with and without use of the cane, and that the claimant's gait and station were fully normal without use of a cane (Exs. 1F/2-4; 3F/5, 9, 13-15, 28-31; 5F/1, 10; 6F/1, 16-17, 22, 61-62; 9F/4-10; 14F/5-7; 17F/2; 19F/6, 20, 29; 21F/45-47). These objective findings show that the claimant is capable of performing light exertional work with additional manipulative, postural, and environmental limitations.

R. 22.

In finding Dr. Buggia's opinion "not persuasive" the ALJ explicitly evaluated the opinion's consistency and supportability. The ALJ found "her opinion is **not supported** by her own objective findings, which were normal and unremarkable, including the claimant having a normal gait and station and being able to perform a squat with no problems, and also because her

opinion is **inconsistent** with the record as a whole," and went on to cite specific discrepancies with the record. R. 22 (emphasis added). But Plaintiff argues the ALJ's stated reasons for finding the opinion unpersuasive are not supported by substantial evidence.

Again, Plaintiff asserts the ALJ erred by relying on normal clinical findings to undermine the limitations Plaintiff claimed stemmed from her fibromyalgia. Pl. Br., Doc. 17. But this argument fails for the reasons previously discussed: the ALJ properly considered normal clinical findings given Plaintiff's other conditions, and the ALJ did not rely only on the clinical findings in finding Plaintiff was not as limited as the medical opinion suggested.

The ALJ's articulated reasons for finding Dr. Buggia's opinion inconsistent with her own examination and unsupported by the record are supported by substantial evidence. Starting with consistency, the ALJ noted that Dr. Buggia's opinion was inconsistent with her objective findings. This is true; for example, Dr. Buggia observed Plaintiff had no difficulty squatting and then opined that Plaintiff could not squat. R. 887, 889. Turning to consistency, the ALJ noted in his opinion that the limitations opined by Dr. Buggia are inconsistent the record, which showed, among other things, that Plaintiff had full muscle strength and normal movements. R. 688-89, 1233, 1315. Thus, there was no support for Dr. Buggia opinion that Plaintiff cannot crawl, kneel,

or squat. On the contrary, Plaintiff was able to do yoga and Zumba. R. 1242, 1263. Thus, I find substantial evidence supports the ALJ's reasons for finding Dr. Buggia's opinion inconsistent with her own examination and the record.

Finally, Plaintiff argues that the ALJ erroneously found that Dr. Buggia's opinion was vague. The ALJ characterized as "vague" Dr. Buggia's finding that Plaintiff is "unable to stand or walk for more than two-thirds of a workday" because it "does not specify what the claimant's limitations and capabilities are directly." R. 22. Plaintiff points out that unpublished Eleventh Circuit opinions have held similar opinions were not vague. *See, e.g., Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 831 (11th Cir. 2006) ("Their opinions were not vague, as they noted that Fries was capable of performing work that did not involve excessive standing, bending, or heavy lifting, but she would have difficulty standing or walking for prolonged periods); *but see Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 314 (11th Cir. 2021) ("The term 'prolonged period' was vague and provided no specific information about how long Sanders could sit or stand in one position."); *Bloodsworth,* 703 F.2d 1233, 1240 (11th Cir. 1983) (explaining that a "brief and cursory" medical opinion may be rejected). I need not resolve this issue. Even if Dr. Buggia's opinion were sufficiently specific, the ALJ's characterization of it as "vague" was harmless. Given that substantial evidence otherwise supports the ALJ's

21

consistency and supportability findings, the ALJ did not err in finding Dr. Buggia's April 22, 2022 opinion unpersuasive.

    B. <u>Record Development as to Plaintiff's Manipulative and Mental Limitations</u>

Plaintiff also argues that the ALJ failed to properly develop the record. Pl. Br., Doc. 17. Specifically, Plaintiff argues that nothing in the record enabled the ALJ to interpret the medical evidence after the ALJ rejected the medical opinion evidence. *Id.* Thus, Plaintiff claims, the ALJ was left to "impermissibly interpret[] the raw evidence" as to Plaintiff's manipulative and mental limitations in the RFC. *Id.*

    1.  Legal Standard for Developing the Record

The ALJ must develop a full and fair record. 20 C.F.R. §§ 404.1512(d); 416.912(d). The regulations provide, "Before [the SSA] make[s] a determination that [a claimant is] not disabled, [the SSA] will develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [her] application." *Id.* §§ 404.1512(d); 416.912(d). The regulations further recognize that the SSA may request the claimant undergo a consultative examination "if . . . medical sources cannot or will not give us sufficient medical evidence about your impairment." *Id.* §§ 404.1517; 416.917.

But an ALJ need not order a consultative examination when the record contains sufficient evidence to make an informed decision.[2] *See Doughty v. Apfel*, 245 F.3d 1274, 1280–81 (11th Cir. 2001) ("The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources."); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (the record "was sufficient for a decision and additional expert testimony was unnecessary"). This is because, contrary to Plaintiff's suggestion, the ALJ is permitted to interpret the medical records; it is ultimately up to the ALJ to assess a claimant's RFC, and that assessment does not have to mirror the opinion of any doctor. *See Castle v. Colvin*, 557 Fed. App'x. 849, 853–54 (11th Cir. 2014) ("[T]he ALJ has the responsibility for determining a claimant's RFC."); *Green v. Soc. Sec. Admin.*, 223 Fed. App'x. 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ.").

2.  Manipulative Limitations

---

[2] Initially, the ALJ ordered a consultation with Dr. Buggia, but, in 2021, Plaintiff began seeing a mental health professional and her records were supplemented thereafter.

Plaintiff argues the records are devoid of opinions as to Plaintiff's manipulative limitations. But the medical records have several references to Plaintiffs manipulative abilities.

Plaintiff testified that she could not hold things, type, open jars, or unbutton her shirt. R. 45. Plaintiff also completed a function report stating that she could not fasten her bra. R. 342. However, she alternatively reported that she could independently brush her teeth (R. 58), vacuum (R. 342), do yoga (*id.*), and do crafts (R. 1263).

Dr. Buggia noted that Plaintiff was "able to pinch, grasp, and manipulate objects" and rated her a "5/5" in dexterity and a "5/5" in grip strength. R. 886. APRN Moran found her to have normal motor strength in her extremities. R. 969. Neurologist Roberta Santos also assessed Plaintiff as having full strength in her fingers. R. 125. X-rays of her hands were unremarkable (R. 891) in contrast to Plaintiff's claim to have finger deformities (R. 983).

The record was not lacking evidence as to Plaintiff's manipulative abilities such that it was necessary for the ALJ to order an additional consultative examination.

### 3. Mental Limitations

Plaintiff also argues the ALJ was required to solicit opinion evidence as to Plaintiff's mental limitations. But the record contains substantial evidence of Plaintiff's mental condition. During examinations, Plaintiff was consistently

found to have good attention, insight, judgment, memory, and a normal thought process. *See e.g.,* R. 108-10; 120 (able to multiply and add); 125; 727; 1406. Beginning in June 2021, Plaintiff visited a mental health provider; there, Plaintiff presented as tearful during the examination and the provider diagnosed her with depression and anxiety. R. 108-10. But, as of September 2021, Plaintiff reported that she was doing much better. R. 1413. Although additional stressors later disrupted Plaintiff's positive outlook, both Plaintiff and her psychiatrist were hopeful they could be resolved. R. 1407 (prescribing an increase in medication to handle short-term anxiety caused by pending biopsy results); 1263 (reporting she planned to do crafts the next day despite having a difficult day). In March 2022, Plaintiff reported that her medications were helping her with anxiety, stress, and depression. R. 1430. And, in May 2022, Plaintiff reported only having one panic attack in the last month. R. 1426.

Accordingly, the ALJ did not err by failing to order a consultative examination or otherwise developing the medical record as to Plaintiff's mental limitations.

C.    Failure to Include Additional Mental Limitations in Plaintiff's RFC

Plaintiff last argues that the RFC is not supported by substantial evidence, because it does not incorporate the ALJ's finding at Step Three that

Plaintiff had moderate limitations in maintaining concentration, persistence and pace. Pl. Br., Doc. 17.

The ALJ must evaluate Plaintiff's mental impairments using the Psychiatric Review Technique ("PRT"). 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ rates the severity of a claimant's ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The PRT is a distinct process from the RFC determination. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). Nonetheless, the Eleventh Circuit has held the PRT findings should not be ignored during the RFC analysis. *Winschel*, 631 F.3d at 1181 (11th Cir. 2011). Rather, the ALJ must "indicate that medical evidence suggested [a claimant's] ability to work was unaffected by [the] limitation [identified in the PRT findings] or "otherwise . . . account for the limitation in the hypothetical [to the VE]." *Id.*

Using the PRT, the ALJ found that Plaintiff was moderately limited in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. R. 16-17. Plaintiff argues that the RFC failed to incorporate limitations associated with Plaintiff's difficulty concentrating, persisting, or maintaining pace. However, the ALJ took these limitations into account by including in the RFC that Plaintiff was limited to work that required "understanding, remembering,

carrying out, and exercising judgment for simple tasks" and that had "few day-to-day changes in terms of work duties, work settings, or work processes." R. 17; *see also* R. 62 (including these limitations in a hypothetical to the VE).

Substantial evidence support's that Plaintiff could perform simple tasks with few day-to-day changes. For example, Plaintiff homeschooled her school-age children in 2020 and, once they returned to school, was responsible for ensuring they kept up with school. R. 124, 1268. She was able to concentrate well enough to do crafts. R. 1268 (reporting making ornaments for others); R. 1413 (reporting enjoying crafts and pottery). And, she repeatedly reported having no difficulty concentrating. *See, e.g.,* R. 967 (no trouble in August 2021); R. 1009 (same in November 2019).

Thus, the ALJ discharged his duty to consider his PRT finding that Plaintiff was moderately limited in concentration, persistence, and pace when forming the RFC. *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that [the plaintiff] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [the RFC] to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace"); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) ("The ALJ adequately accounted for all of [the plaintiff's] impairments in the hypothetical posed to the VE because he implicitly

accounted for [the plaintiff's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work.").

Again, the Court does not consider whether evidence could support a different RFC finding; rather, the Court determines whether the ALJ's finding is supported by substantial evidence. *See Moore*, 405 F.3d at 1213 n.6. It is. The ALJ did not err in accounting for Plaintiff's mental limitations.

## V.    Conclusion

Having found the ALJ's decision was based on substantial evidence and employed proper legal standards, I affirm the Commissioner's decision. For the reasons stated:

(1)    The decision of the Commissioner is AFFIRMED.

(2)    The Clerk of Court shall enter judgment in the Defendant's favor, terminate any pending motions, and close the case.

ORDERED on February 21, 2024.

NATALIE HIRT ADAMS
United States Magistrate Judge